UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERIEON THOMAS (2018-0815131), ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-2026 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| TOM DART, *et al*., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Plaintiff Derieon Thomas, a detainee at Cook County Jail, filed a lawsuit about a broken sink in his cell. He sued a collection of defendants, including Sheriff Dart. The Sheriff, in turn, moved to dismiss, arguing that the complaint fails to allege any facts that could support a plausible inference of personal involvement. And without personal involvement, there is no liability under section 1983.

For the reasons stated below, the motion to dismiss is granted.

## Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

For eleven days in February and March 2022, Plaintiff Derieon Thomas had no running water in his cell at Cook County Jail. *See* Cplt., at 4 (Dckt. No. [7]). His sink broke, leaving him without any drinking water while inside.

The plumbing problems began on February 27, 2022. *Id.* That day, he alerted several unnamed correctional officers that his sink wasn't working, but to no avail. No one came to fix the sink. *Id.*

The next day, a plumber came to fix a sink in a nearby cell, and Thomas "convinced" the plumber to fix his sink, too. *Id.* The plumber fixed the sink, but success was short-lived. Thomas's sink stopped working again within an hour. *Id.*

The plumber came back the next day. *Id.* He attempted to fix Thomas's sink a second time, but once again, he was unsuccessful. *Id.* So, Thomas notified Defendant Phillips, a Cook County Jail sergeant, about the problem. *Id.*

Sergeant Phillips told Thomas that she would submit a work order for the sink. *Id.* Meanwhile, Thomas asked every other correctional officer who worked in his area if he could leave his cell to get water out of the fountain. *Id.* The officers denied Thomas's requests and informed him that he could only leave his cell during his assigned dayroom schedule. *Id.*

That plan posed a problem. Each day, Thomas had only one hour of dayroom time. *Id.* So, he could drink water only once a day, during that one-hour period. *Id.*

On March 4, Thomas had a court hearing via Zoom. *Id.* at 5. He took that opportunity to ask Defendant Surane, another sergeant at Cook County Jail, to move him to a cell with a working sink. *Id.* Sergeant Surane refused. *Id.*

Later that evening, two correctional officers (Officers Guzman and Roman) gave Thomas some relief. They allowed Thomas to leave his cell and fill plastic bags with water to bring back to his cell. *Id.*

The next morning during breakfast, Officers Guzman and Roman dropped off more rolled-up plastic bags filled with water. *Id.* And on March 10, the officers once again let Thomas fill up bags. *Id.*

But Guzman and Roman were the only officers who helped Thomas. *Id.* Other correctional officers were less understanding, allegedly telling Thomas that "[t]his [is] what happens to people who come to the hole." *Id.* In fact, Thomas alleges that most of the correctional officers ignored his requests for more water. *Id.*

All told, the lack of water left Thomas "down, hopeless, dehydrated, helpless, and emotionally distraught." *Id.* He alleges that he "had to live through these inhumane living conditions" and hopes "to stop this from happening to others." *Id.*

So, Thomas sued Cook County Sheriff Tom Dart, Sergeant Phillips, and Sergeant Surane. The other defendants answered the complaint.

Sheriff Dart, however, moved to dismiss. *See* Def.'s Mtn. (Dckt. No. 32). If the reader is wondering what role Sheriff Dart played in the story, that's the whole point of the motion.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

Thomas does not specify in his complaint whether he sued Defendant Dart (or any of the Defendants) in his official or individual capacity. The Court will address each possibility.

### I. Individual Capacity Claim

Sheriff Dart argues that any individual capacity claim against him fails because the complaint contains no allegations of his personal involvement in the constitutional violations. *See* Def.'s Mtn., at 2–3 (Dckt. No. 32). He also contends that the complaint does not allege that he knew of or consented to the conduct, or that the alleged violations were systemic. *Id.* at 3.[1] The Court agrees.

Liability under section 1983 depends on personal involvement in the alleged constitutional violation. *See Williams v. Shah*, 927 F.3d 476 (7th Cir. 2019). To state a claim, a complaint must contain enough facts to give rise to a plausible inference that each defendant personally participated in the alleged wrongdoing. *See, e.g.*, *Martinez v. Wexford Health Servs., Inc.*, 2021 WL 1546429, at *3 (N.D. Ill. 2021) ("[T]he underlying analysis is whether the complaint, as a whole, creates the plausible inference that each defendant is liable for the act complained of."); *see also Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("The

---

[1] Thomas responded to the motion, but not really. *See* Pl.'s Resp. (Dckt. No. 35). The response largely rehashes the facts of the original complaint, which, as the Court will discuss, fail to mention Defendant Dart at all. *Id.* Thomas's failure to respond to Defendant Dart's argument provides an independent ground to grant the motion. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") (citations omitted).

plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct.").

Sitting atop the chain of command is not enough to rope an official within the circle of liability. To recover damages against an official in a supervisory role, a plaintiff "may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citation omitted); *see also Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009) ("The assumption underlying this choice of defendants – that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable – is a bad one.").

Even so, a managerial post isn't a firewall against liability, either. An administrator may find out about a constitutional violation so grave that it demands a response. "[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions" to give rise to a duty to act. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). But the communication must give the official "sufficient notice to alert him or her" to a risk to inmate health or safety. *Id.*; *see also Perez*, 792 F.3d at 782 (requiring "sufficient knowledge" by the prison official). The official must "realize[ ]" that a substantial risk of harm to the prisoner exists, "but disregard[ ] it." *Perez*, 792 F.3d at 781. "Once an official is alerted of such a risk," the refusal to act might give rise to a claim. *See Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011).

But only a substantial risk of harm is enough to put an administrator on notice. Senior officials cannot "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature." *See Antonelli v. Sheahan*,

5

81 F.3d 1422, 1428–29 (7th Cir. 1996); *see also Perkins v. Williams*, 2018 WL 453743, at *4 (N.D. Ill. 2018) (explaining that high-level officials "cannot be expected, even with the inference allowed by *Antonelli*" to know about conditions affecting a specific cell or shower).

An administrator is, however, presumably knowledgeable about the jail's governing policies and how they affect inmates in general. An administrator "can be expected to know of or participate in creating systemic, as opposed to localized, situations." *See Antonelli*, 81 F.3d at 1429; *see also Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015) ("[T]he personal involvement of senior jail officials, such as [Sheriff] Dart, can be inferred at the motion to dismiss stage, where, as here, the plaintiff alleges 'potentially systemic,' as opposed to 'clearly localized,' constitutional violations.") (quoting *Antonelli*, 81 F.3d at 1428–29); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) (holding that "defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systemic jail conditions"). A high-ranking officer "can be expected to have personal responsibility" for "systemic violations." *Antonelli*, 81 F.3d at 1429.

Here, Thomas's complaint does not allege any personal involvement by Sheriff Dart. Thomas does not allege that Sheriff Dart knew about the faulty sink, or condoned the plumbing problems, or played any role in the lack of access to drinking water. In fact, apart from the caption, the complaint does not mention Sheriff Dart at all. There is no nexus between the Sheriff and the sink.

Name-dropping in a caption is not a foothold for a claim. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th

6

Cir. 1974); *see also Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."); *Moore v. Nat'l YMCA, Inc.*, 2019 WL 4059151, at *4 (N.D. Ill. 2019) ("'[M]erely naming a defendant in the caption is insufficient to state a claim.'") (quoting *Williams v. County of Cook*, 2010 WL 3324718, at *9 (N.D. Ill. 2010)).

The complaint lacks any facts that could give rise to a plausible inference that Sheriff Dart played any role in Thomas's lack of access to drinking water. And without any personal involvement, Sheriff Dart does not belong in the case. *See Palmer v. Marion County*, 327 F.3d 588, 593–94 (7th Cir. 2003) (holding that the defendant sheriff was not subject to individual liability where he had no knowledge of or personal involvement in the actions leading to the alleged constitutional violation); *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994) (same).

Moreover, nothing in the complaint suggests that the prolonged lack of drinking water was a systemic issue. "A systemic violation means a general prison condition that affects a widespread group of inmates." *See Eason v. Pritzker*, 2020 WL 6781794, at *5 (N.D. Ill. 2020); *see also Byron v. Dart*, 825 F. Supp. 2d 958, 963–64 (N.D. Ill. 2011). Here, Thomas describes only his isolated experience in his cell (and a sink problem by his neighbor).

In sum, the complaint does not provide a factual foothold for keeping Sheriff Dart in the case in his individual capacity.

## II.  Official Capacity Claim

An official capacity claim against Defendant Dart also fails.

"[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). So, if the complaint includes a claim against Sheriff Dart in his official capacity, then Thomas is,

in effect, suing the Cook County Sheriff's Department. *See Bertha v. Hain*, 787 F. App'x 334, 339 (7th Cir. 2019) ("The claims against the Sheriffs in their official capacities are really against the Kane County Sheriff's Office.") (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 n.4 (7th Cir. 2010)).

Three scenarios can give rise to municipal liability under section 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *First Midwest Bank ex rel. Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021); *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

The complaint must allege a policy, a practice, or a decision-maker. Otherwise, there is no action by the municipality itself. "The critical question under *Monell* is whether a policy or custom of a municipal entity caused a constitutional deprivation." *Gonzalez v. McHenry County*, 40 F.4th 824, 829 (7th Cir. 2022).

The municipal action also must be the moving force behind the federal-rights violation. *LaPorta*, 988 F.3d at 987. "In other words, to maintain a § 1983 claim against a municipality, one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Thomas's complaint fails to check any of the boxes for municipal action under *Monell*. The complaint does not allege that Cook County Jail had an express policy to neglect sinks or deny drinking water to detainees. The complaint does not allege that his treatment was part of a

larger practice or custom at the Jail. And he does not allege that a person with final policymaking authority caused his injury.

The complaint does not allege any of the routes to *Monell* liability. *See Taylor v. Dart*, 2020 WL 1330377, at *5 (N.D. Ill. 2020) (dismissing claims where plaintiff "fail[ed] to allege that Defendants engaged in any conduct based upon a governmental policy or custom with which to hold Sheriff Dart liable in his official capacity"); *see also Love v. Dart*, 2022 WL 797051, at *6 (N.D. Ill. 2022) ("[Plaintiff's] *Monell* claim against Wexford fails at the outset because he does not identify any specific Wexford policy, practice, or custom that could have caused any violation of his constitutional rights."). Without any municipal action, there is no municipal liability.

## Conclusion

For the foregoing reasons, Defendant Dart's motion to dismiss is hereby granted.

Date: April 27, 2023

Steven C. Seeger
United States District Judge