UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERIEON THOMAS (2018-0815131), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22-cv-2026 |
| v. | ) | |
| | ) | Hon. Steven C. Seeger |
| TOM DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court took a look at the amended complaint filed by Plaintiff Derieon Thomas, a pretrial detainee at the Cook County Jail. The Court will allow the filing, even though Plaintiff did not receive leave of court under Rule 15 to amend the pleading. But all of the claims are dismissed, except the claims against Sergeant Phillips and Sergeant Surane, meaning the two individuals who were facing claims in the original complaint.

As a technical matter, the filing of the amended complaint was procedurally improper. Rule 15(a)(2) provides that a plaintiff needs leave of court or consent of the adverse party to file an amended complaint. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff did not request or receive permission from the Court to file an amended complaint. Maybe Defendants consented, but this Court did not.

Then again, the parties filed a joint initial status report on September 21, 2023 and submitted a proposed case calendar. Importantly, the parties proposed a deadline of October 23, 2023 to file an amended complaint. Strictly speaking, that deadline was a deadline to request permission to file an amended complaint. It was not a license to file an amended complaint by that deadline. A party still needed to ask.

But Plaintiff is a pro se litigant. And maybe Plaintiff thought that the deadline meant that he had permission to file an amended complaint, so long as it was filed by October 23, 2023. And here, Plaintiff met that deadline by filing the amended complaint by October 19, 2023. Moreover, in the intervening month and a half, Defendants have not objected to the amendment under Rule 15.

So, the Court will retroactively give Plaintiff leave to file the amended complaint under Rule 15(a). The reality is that this Court would have given Plaintiff permission, if Plaintiff had asked. And Defendants do not appear to have suffered any prejudice because they have not objected.

Even so, filing the amended complaint is one thing. The adequacy of the amended complaint is another. And that's where the amended complaint runs into trouble.

The amended complaint is similar to the original complaint in many ways. Plaintiff alleges that his sink at the Cook County Jail did not work for roughly eleven days in February and March 2022. So he lacked drinking water inside his cell. As before, he sued Sergeant Phillips, and Sergeant Surane. He basically alleges that he told them about the lack of drinking water, but they did not respond adequately.

The Court reads the amended complaint to allege a conditions-of-confinement claim under the Fourteenth Amendment, based on a lack of access to drinking water. To state a claim, a plaintiff must allege "conditions of confinement that were objectively unreasonable and excessive in relation to any legitimate non-punitive purpose." *See Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019) (cleaned up); *see also Bell v. Dart*, 807 F. App'x 562, 564 (7th Cir. 2020) ("[W]e scrutinize conditions-of-confinement claims from pretrial detainees objectively, asking whether the conditions are rationally related to a legitimate non-punitive purpose.").

As before, the amended complaint includes a claim against Sheriff Dart. The amended complaint alleges that Sheriff Dart is responsible for the facility, and thus is ultimately responsible for repairing any issues at the jail.

That theory cannot survive. Liability under section 1983 depends on personal involvement in the alleged constitutional violation. *See Williams v. Shah*, 927 F.3d 476 (7th Cir. 2019). Sitting atop the chain of command is not enough to rope an official within the circle of liability. To recover damages against an official in a supervisory role, a plaintiff "may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citation omitted).

Like the original complaint, the amended complaint does not allege that Sheriff Dart had any personal involvement with the issues about Plaintiff's sink. In fact, on April 27, 2023, this Court dismissed the claims against Sheriff Dart in his individual capacity on that ground. *See* 4/27/23 Order (Dckt. No. 39).

For the second time, Plaintiff has filed a pleading against Sheriff Dart without alleging any facts to support a claim. The individual claims against Sheriff Dart are hereby dismissed.

The amended complaint also added three new individual defendants: (1) John Mueller, the I.I.C. Services Director; (2) correctional officer Guzman; and (3) correctional officer Roman.

The amended complaint alleges that Mueller was "notified" about his living conditions, but "didn't take the issue serious because he denied [Plaintiff's] grievance appeal," even though the case was a "serious matter." *See* Am. Cplt. (Dckt. No. 49, at 6 of 10). The mere act of denying a grievance is not a basis for a claim about the underlying conduct itself. *See, e.g.*, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures . . . do not by

their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). The claims against Defendant Mueller are dismissed.

The amended complaint also alleges that correctional officers Guzman and Roman did, in fact, provide water to Plaintiff. Guzman and Roman let Plaintiff out of his cell "to fill plastic from [his] lunch/breakfast trays with water to drink" while he was in his cell. *Id.* They "continuously filled plastic with water on different occasion[s] between" March 3 and March 10, 2022. Plaintiff views that action as "inhumane," "unsanitary," and "unprofessional[]." *Id.*

Plaintiff may have a point that the source of water was not ideal. Even so, a pretrial detainee is not entitled to Evian, either. "A single clogged toilet does not violate the Constitution, and prisoners are not entitled to Fiji Water on demand." *Hardeman*, 933 F.3d at 823–24. "But on the other end of the spectrum, a defendant cannot purposefully deny water until a prisoner is on the brink of death or force a prisoner permanently to live surrounded by her own excrement and that of others." *Id.*

The Constitution may require access to safe drinking water. *See Bell*, 807 F. App'x at 563 ("Under the Fourteenth Amendment, pretrial detainees are entitled to have enough water for drinking and sanitation[.]") (cleaned up). But Plaintiff does not allege that the water was unsafe or unfit for human consumption. *See* Am. Cplt. (Dckt. No. 49, at 6 of 10) ("C.O. Guzman and C.O. Roman let me and my cell mate out to fill plastic from our lunch/breakfast trays with water to drink while we're in the cell. Which is inhumane and unsanitary.").

And on top of it all, the amended complaint does not allege that officer Guzman and Roman denied him water altogether. The simple reality is that officers Guzman and Roman were the ones who provided him with water – life's necessity – when his sink didn't work. *See* Am. Cplt. (Dckt. No. 49, at 6 of 10) ("C.O. Guzman and C.O. Roman let me and my cell mate out to fill plastic from our lunch/breakfast trays with water to drink while we're in the cell.").

Putting those pieces together, the amended complaint does not state a claim against officers Guzman and Roman. The amended complaint does not allege that they took steps to deprive him of safe drinking water. If anything, it alleges that they did the opposite, and made sure that he had something to drink. Officers Guzman and Roman are dismissed.

That leaves the claims against Cook County, "Facility Management," and Sheriff Dart (to the extent that the complaint could be read to state a claim against the Sheriff in an official capacity). A complaint against Sheriff Dart in his official capacity is the same thing as a claim against Cook County itself. *See Miller v. Mascillino*, 2023 WL 6276526, at *5 (N.D. Ill. 2023) ("A § 1983 suit against an officer in his official capacity is generally treated as a suit against the entity of which the officer is an agent."). Also, "Facility Management" is not a juridical entity. It's all Cook County. So the claims against "Facility Management" and Sheriff Dart in his official capacity are dismissed as duplicative.

3

The claim against Cook County alleges a failure to train. The amended complaint alleges that the Sheriff "failed in the duty to properly train and supervise" the employees "not to violate Cook County residents' due process right by housing them in 'condemn cells.'" *See* Am. Cplt. (Dckt. No. 49, at 6 of 10). The amended complaint further alleges that the Sheriff failed to train and supervise the employees by them not handling the issue the way that they suppose [sic] to been trained to do." *Id.* at 7 of 10. Plaintiff adds that the jail has a widespread policy or practice, too. *Id.*

Viewed liberally in Plaintiff's favor, the amended complaint does not state a claim. A claim against Cook County is a *Monell* claim. "The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)[.]" *See Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017).

"[A] municipality may face liability for money damages under § 1983 only if the unconstitutional act about which the plaintiff complains was caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice of custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Carmona v. City of Chicago*, 2018 WL 306664, at *2 (N.D. Ill. 2018) (St. Eve, J.).

Here, the allegations hover at a high level of generality. The allegation of a widespread policy or practice is conclusory, too. A general conclusion is not enough to allege a specific claim. *See id.* at *3 ("Plaintiff's failure-to-train and failure-to-discipline allegations are similarly insufficient. Plaintiff alleges, in conclusory fashion and without any supporting factual detail, that the City causes the misconduct at issue here by failing to adequately train or discipline its police officers. Again, courts regularly reject boilerplate allegations like Plaintiff's that lack any supporting facts.").

Maybe the theory is that Sheriff Dart did not act. But a failure to act theory requires actual or constructive knowledge. "The[] teachings from the Supreme Court and our court make plain that *Monell* liability based on a failure to act, at its core, follows from a showing of constitutional violations caused by a municipality's deliberate indifference to the risk of such violations. Sometimes the notice will come from a pattern of past similar violations; other times it will come from evidence of a risk so obvious that it compels municipal action. But at all times and in all *Monell* cases based on this theory, the Supreme Court has directed the focus on the presence and proof of 'a known or obvious' risk." *J.K.J. v. Polk County*, 960 F.3d 367, 381 (7th Cir. 2020). Here, the amended complaint does not include sufficient facts to impute actual or constructive knowledge to Sheriff Dart about the broken sink.

What's more, a failure to train theory is on shaky ground. "[F]ailure-to-train claims[] are a 'tenuous' form of *Monell* liability." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) (St. Eve, J.) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

4

Maybe some other complaint could overcome the hurdles of *Monell* and state a claim about a failure to train. But the amended complaint does not. It is not even clear what, exactly, Plaintiff wanted the jail to do, or what additional training the jail should have provided. The amended complaint is about a broken sink – but the amended complaint also alleges that the jail sent a plumber to fix the problem.

The plumber couldn't fix the problem. But that's a plumbing problem, not a constitutional problem. The amended complaint alleges that the jail took action to fix the sink, albeit unsuccessfully. If there is some additional training that Plaintiff thinks that the jail could have provided, he doesn't reveal what it is.

Even more, training about how to deal with prisoners who have broken sinks is at an inappropriate level of specificity. A jail cannot realistically have policies and procedures to cover every possible issue that might come up.

In sum, the claims against Sergeant Phillips and Sergeant Surane – meaning the defendants from the original complaint – survive scrutiny, as this Court previously ruled. But the complaints against everyone else do not. All other defendants are hereby dismissed.

The Court closes by addressing Plaintiff's motion for attorney representation (Dckt. No. [50]). The latest motion for attorney representation is not Plaintiff's first motion for attorney representation. This Court denied Plaintiff's earlier motion for an attorney on September 1, 2023 (Dckt. No. [41]). The Court explained that Plaintiff had not demonstrated that he searched for counsel and that the case was not overly complex because it involves a broken sink in Plaintiff's cell. *See* 9/1/23 Minute Entry (Dckt. No. 41).

Plaintiff's current motion does reflect that he contacted three law firms asking for a lawyer. *See* Mtn. for Attorney, at 1 (Dckt. No. 50). But at the end of the day, the facts of the case remain the same. The case is not overly complex, and Plaintiff does have some high school education. *Id.* at 2; *see also* 9/01/2023 Minute Entry (Dckt. No. 41) ("The case is not overly complex. It involves a broken sink in [Plaintiff's] cell. Plaintiff has not demonstrated that he cannot proceed on his own."). Plaintiff's motion for an attorney (Dckt. No. [50]) is denied.

Date: December 7, 2023

Steven C. Seeger
United States District Judge