UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERIEON THOMAS, ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-2026 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| TOM DART *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Derieon Thomas received a disciplinary infraction for an altercation with another inmate at the Cook County Jail. He got shipped to a restrictive housing unit. And that's when he discovered that his sink didn't work.

A plumber tried to fix it, but the sink didn't cooperate. In the days that followed, the jail officials submitted a number of work orders, but the plumbing problems persisted. The sink stubbornly refused to flow.

In the meantime, Thomas had to get fluids from other sources. For about two weeks, Thomas received liquids during meal times. And he had access to the drinking fountain in the dayroom, too. But the water didn't flow in his sink.

Thomas left the restrictive housing unit after two weeks, and he left with bad memories and hard feelings. So he filed suit against Sheriff Dart and two officers at the jail. After discovery, Defendants moved for summary judgment.

For the reasons stated below, the motions for summary judgment are granted.

### Background

Before diving into the facts, the Court offers one prefatory observation. Defendants supported their motions for summary judgment with statements of material facts, as required by the Local Rules. Thomas did not respond. So, under the Local Rules, the facts are deemed admitted. *See* L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

The following summary might read like a recitation of the work order history for a sink. If so, there's a good reason for that. That's what this Court received from Defendants. And that's all this Court has to work with, because Thomas didn't chime in.

For roughly two weeks in 2022, Plaintiff Derieon Thomas had no running water in his cell at Cook County Jail. His sink broke.

The story begins on February 27, 2022, when Thomas moved to Division 9 Tier 1G, a restrictive housing area, after a disciplinary hearing. *See* Def. Phillips' Statement of Material Facts, at ¶ 38 (Dckt. No. 78). He received a disciplinary infraction for an altercation with another inmate, and was sentenced to 14 days in the restrictive unit housing. *See id.*; Def. Surane's Statement of Material Facts, at ¶ 9 (Dckt. No. 69).

That's when the plumbing problems began.

When he arrived in his new cell, Thomas noticed that the sink did not work. No water came from the faucet. *See* Def. Phillips' Statement of Material Facts, at ¶ 39 (Dckt. No. 78). Thomas notified correctional officers that the sink did not work.

Thomas wasn't ignored. Instead, the officers responded that they would put in a work order request to fix the sink. *Id.*

On February 28, Thomas was released from his cell for his daily dayroom time. As luck would have it, the plumber was in the area to address a different issue. *Id.* at ¶ 40. The plumber visited Thomas's cell and worked on his sink. The plumber did his magic, and the sink started working again. *Id.*

The work order was opened on February 28, and closed on March 1. *Id.* at ¶ 42; Def. Surane's Statement of Material Facts, at ¶ 10 (Dckt. No. 69). Meanwhile, Thomas had access to drinking water in the dayroom. *See* Def. Surane's Statement of Material Facts, at ¶ 10.

The plumbing magic soon wore off.

Before long (the record doesn't reveal exactly when), the sink stopped working for a second time. Thomas notified both Lieutenant Phillips and correctional officers that his sink didn't work. *See* Def. Phillips' Statement of Material Facts, at ¶ 41 (Dckt. No. 78).

Once again, the staff took action. Lieutenant Phillips placed a work order request for the sink, and made sure to notify facilities management of the issue with the sink. *Id.*

On March 4, Thomas alerted Sergeant Surane about the lack of running water in his cell. *Id.* at ¶ 43. Thomas requested relocation to another cell, but was denied. *Id.* Sergeant Surane told him that since his toilet worked, he could not be moved to another cell. *Id.*

Once again, Thomas didn't go without water. He drank water from the fountain in the dayroom, and filled up plastic bags with water. *See* Def. Surane's Statement of Material Facts, at ¶ 13 (Dckt. No. 69).

On March 8, Benjamin Daniel requested a work order for Division 09 Tier 1G cell 1088, because there was an issue with the Plumbing / Sink No Water. *See* Def. Phillips' Statement of Material Facts, at ¶ 44 (Dckt. No. 78). Plumber Joe Lynch from Facilities Management completed the entered work order under WO- ID# 818684 on March 11. *Id.*

On March 10, Bruce Villanova requested a work order for Division 09 Tier 1G cell 1088, because there was an issue with the sink being clogged. *Id.* at ¶ 45. Plumber Lynch completed the entered work order under WO- ID# 819279 on March 10. *Id.*

On March 10, Stan Acovelli requested yet another work order for the sink, because there was an issue with the Plumbing / Sink No Water. *Id.* at ¶ 46. Plumber Lynch completed the entered work order under WO- ID# 819416 on March 11. *Id.*

Thomas didn't go without water for long stretches of time. Thomas was provided water and an additional drink with his meal trays, which he received three times a day. *Id.* at ¶ 51.

Thomas also had the opportunity to come out of his cell once a day for dayroom time. The dayroom had a working drinking fountain. *Id.* at ¶ 9. Thomas had access to the dayroom, and was given the opportunity to drink water and to get water for his cell. *Id.* at ¶ 50.

Thomas did not need any medical treatment as a result of the lack of running water in his cell. *Id.* at ¶ 10. Thomas suffered no injuries. *Id.* at ¶ 11.

Thomas left the restrictive housing unit on March 12. *Id.* at ¶ 8. So his relationship with that sink came to an end. Thomas left the cell. The fate of the sink is unknown.

Thomas went roughly two weeks with intermittent access to flowing water. He received fluids on a regular basis. But he didn't have ready access in his cell.

So he sued. Thomas filed suit against Sheriff Dart, Lieutenant Phillips, and Sergeant Surane under 42 U.S.C. § 1983. *Id.* at 1. This Court granted Sheriff Dart's motion to dismiss. *See* 4/27/23 Order (Dckt. No. 39).

After discovery, Phillips and Surane moved for summary judgment. *See* Mtn. for Summ. J. (Dckt. No. 68); Mtn. for Summ. J. (Dckt. No. 72). The motions are nearly identical, so the Court will address them together. Phillips and Surane served a notice under Local Rule 56.2, given that Thomas is a *pro se* litigant.

This Court set a briefing schedule and directed Thomas to file a response by May 20, 2024. *See* 2/13/24 Order (Dckt. No. 64).

That deadline came and went long ago. Thomas never responded.

**Legal Standard**

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

But when the non-moving party does not respond to a motion for summary judgment, the court "depart[s] from [its] usual deference toward the non-moving party . . . and accepts all of [the movant]'s unopposed material facts as true." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citing *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994)).

**Analysis**

Defendants moved for summary judgment on several grounds, but this Court only needs to reach one of them. The Court agrees that Defendants are entitled to qualified immunity.

"The doctrine of qualified immunity shields public officials from undue interference with their duties and from potentially disabling threats of liability." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (quotation marks omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). Qualified immunity "provides immunity from suit." *Id.* (cleaned up) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

A court's analysis of qualified immunity depends on "two central questions: whether the officers violated [the plaintiff]'s constitutional rights and whether the rights they allegedly violated were clearly established at the time the incident occurred." *See Jones v. Clark*, 630 F.3d 677, 682 (7th Cir. 2011) (citation omitted). The Court "may address these questions in either

4

order." *Id.* And "if either inquiry is answered in the negative, the defendant official is protected by qualified immunity." *See Smith*, 10 F.4th at 737 (citing *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019)).

The Court's analysis starts and ends with the second question – whether the constitutional right at issue was clearly established at the time of the alleged violation.

The plaintiff bears the burden of showing the existence of a clearly established right. *See Pryor v. Corrigan*, 124 F.4th 475, 488 (7th Cir. 2024). To do so, the plaintiff must "show[] that there is a case 'on point or closely analogous' that allows [the Court] to conclude that a reasonable government employee would or should know that her conduct is unlawful." *See Sebesta v. Davis*, 878 F.3d 226, 234 (7th Cir. 2017) (citing *Boyd v. Owen*, 481 F.3d 520, 527 (7th Cir. 2007)).

Thomas didn't respond to the motions for summary judgment. So by definition, he did not come forward with any cases that are "on point or closely analogous."

This Court has no duty to do legal research for a litigant. The adversary system depends on the parties sticking up for themselves. The parties must assert their own rights, do their own research, and make their own arguments. *See Burton v. Oak Point Univ.*, 2024 WL 3338925, at *3 (N.D. Ill. 2024) ("[T]he Court will not make arguments for [the plaintiff]."); *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999).

Still, this Court did a little poking around. Several courts have held that there is no constitutional right to have running water in one's cell. *See, e.g.*, *Williams v. Collins*, 2015 WL 4572311, at *3 (N.D. Ill. 2015) ("[A] lack of running water in an inmate's cell is not a constitutional violation where the inmate has access to drinking water in other prison areas."); *Scruggs v. SinClair*, 2016 WL 344534, at *2 (N.D. Ind. 2016) ("As a threshold matter, an inmate is not entitled to have running water in his cell.").

The issue is not whether Thomas had a right to have access to drinking water. After all, a prison does have a duty to provide basic needs to inmates, including access to water. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) ("[T]he right to water for drinking . . . is clearly established."); *see also Davis v. Biller*, 2003 WL 22764872, at *2 (N.D. Ill. 2003) ("[A]n inmate has a basic right to adequate drinking water."). Water and food are part of life's necessities, and a prison does have an obligation to give inmates what they need to stay alive.

Here, Thomas did have access to water. He simply didn't have on-demand, anytime-you-want-it access to water in his cell.

What's more, there is no reason to think that Phillips or Surane "would or should [have] know[n] that [their] conduct [was] unlawful." *See Sebesta*, 878 F.3d at 234 (citation omitted).

Defendants didn't ignore Thomas. If anything, they tried to help him. Phillips submitted a work order for Thomas's cell, hoping to fix the broken sink. *See* Def. Phillips' Statement of Material Facts, at ¶ 41 (Dckt. No. 78). As far as the Court can see, Phillips did not act

unlawfully – much less act in a way that she "should know . . . is unlawful." *See Sebesta*, 878 F.3d at 234 (citation omitted).

Surane didn't do anything problematic, either. Surane simply denied Thomas's request to move to a different cell. *See* Def. Surane's Statement of Material Facts, at ¶ 9 (Dckt. No. 69). But Surane did not have the power to transfer a detainee to another cell without getting approval from the Classification Unit. *Id.* That's a far cry from "know[ing] that h[is] conduct [was] unlawful." *See Sebesta*, 878 F.3d at 234 (citation omitted).

Based on the record, there is no reason to think that Phillips and Surane did anything to violate a clearly established right. If anything, they acted as the plumber's helper. Defendants are entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Defendants' motions for summary judgment are granted.

Date: February 18, 2025

Steven C. Seeger
United States District Judge